RECEIVED
in Clerk's Office
MAY 18 2020
U.S. District Court
Middle District of TN

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| Plaintiff(s), | : Case No.: 15-CR-00037-01 |
| v. | : |
| | : |
| ERIC MCEWEN | : |
| Defendant. | : |

## MOTION TO REDUCE SENTENCE PURSUANT TO 18 U.S.C. §3582(c)(1)(A)(i)

NOW COMES, Eric McEwen, (Hereinafter, "Petitioner") respectfully moves this Honorable Court for an order reducing his sentence based on the "extraordinary and compelling reasons" discussed below, pursuant to the recently amended 18 U.S.C. § 3582(c)(1)(A)(i). Petitioner also respectfully requests telephonic oral argument on this motion (only if this Honorable Court deems it necessary).

## INTRODUCTION

Petitioner came before this Honorable Court for sentencing on January 26, 2017. He plead guilty to Count One of a two-count indictment. Petitioner was sentenced by this Honorable Court to 72 months imprisonment. He was 40 years old at the time.

1

In the past 3 years, Petitioner has worked diligently in custody, watching from afar as his committed wife, raised their children. His addiction to drugs, one of the driving forces of his drug dealing, is long past. He is now 43 years old. He has an acute bronchial disorder, he has an acute respiratory illness, he has Type II Diabetes, he is asthmatic, he has high blood pressure, he has High Cholesterol, he is on a Bureau of Prisons C-Pap machine and he is a middle age African-American male. Petitioner's circumstances are extraordinary and compelling; those circumstances are exacerbated by the spreading COVID-19. With the passage of the First Step Act, this Court has both the jurisdiction and the discretion to release him early. For the reasons set forth below, it should do so.

## FACTUAL AND PROCEDURAL BACKGROUND

On January 26, 2017, Petitioner was sentenced to 72 months imprisonment by this Honorable Court for Conspiracy to Distribution and Possession with Intent to Distribute Oxycodone, Hydromorphone and Oxymorphone.[1] In addition to the aforementioned counts were penalties and Forfeiture Allegations of the offenses pursuant to Titles 21 U.S.C. § 853(a) and 28 U.S.C. § 2461(c).

---

[1] Petitioner was found guilty by jury verdict to the following count: of Conspiracy to Possession and Distribute of Oxycodone, Hydromorphone and Oxymorphone in violation of Title 21 U.S.C. § 841 (a)(1) and (b)(1)(B)(i). Additionally, Petitioner was subjected to forfeiture penalties pursuant to Title 21 U.S.C. § 853(a)(1) and (a)(2).

2

Petitioner has served a great portion of that sentence as of the filing of this motion. Petitioner does qualify and should be granted relief as a result of the new amendments to 18 U.S.C. § 3582(c)(1)(A)(i) via the First Step Act.

On February 25, 2020, Petitioner submitted a written request to the Warden of FCI Allenwood asking that he move this Court for a reduction of his sentence under 18 U.S.C. § 3582(c)(1)(A)(i). As of the date of this filing, the warden has not filed a motion with this Court on Petitioner's behalf nor has he responded to Petitioner's request. However, as a result of the recent amendments to Section 3582(c)(1)(A)(i), the Court may reduce Petitioner's sentence itself for the reasons set forth below. See P.L. 115-391, 132 Stat. 5194 § 603 (Dec. 21, 2018).

## DISCUSSION

This Honorable Court is empowered to modestly reduce Petitioner's sentence based on the compelling circumstances detailed here. First, this Honorable Court has jurisdiction to do so because more than 30 days have passed since Petitioner submitted his request to the warden and no motion has been filed with this Honorable Court. Second, Congress, via the First Step Act, vested the Court with the authority to determine which extraordinary and compelling circumstances warrant a sentence reduction. Third, Petitioner's circumstances present legitimate and sound grounds for a modest sentence reduction particularly in light of the COVID-19 pandemic.

3

Case 3:15-cr-00037   Document 1253   Filed 05/18/20   Page 3 of 15 PageID #: 5501

## 1. The Court has Jurisdiction to Grant Release Pursuant to 18 U.S.C. § 3582.

Recent changes to the statutory language of 18 U.S.C. § 3582 provide new jurisdiction to federal courts to grant release for extraordinary and compelling reasons. The Comprehensive Crime Control Act of 1984 first included the so-called "compassionate release statute" which allowed for a district court to modify a final term of imprisonment after finding the existence of "extraordinary and compelling reasons" only upon motion by the Director of the Bureau of Prisons ("BOP"). 18 U.S.C. § 3582(c)(1)(A)(i); see also P.L. 98-473, 98 Stat 1837 (Oct. 12, 1984). Without such motion, district courts were unable to reduce a prisoner's sentence, even if it concluded that extraordinary and compelling reasons existed to do so. The BOP served as a gatekeeper to a prisoner's road to potential relief and limited the sentencing court's jurisdiction. However, in 2018, Congress enacted the First Step Act and amended 18 U.S.C. § 3582, thereby empowering sentencing courts to review such motions with or without a motion from the Director of the BOP. See P.L. 115-391, 132 Stat. 5194 § 603. Under the amended statute, a sentencing court can now reduce a sentence for "extraordinary and compelling reasons" either if the Director of the BOP files a motion requesting such relief or "upon motion of the defendant" if the defendant has fully exhausted all administrative remedies to appeal the BOP's failure to bring a motion or 30 days have lapsed "from the receipt of such request by the warden of the defendant's facility," whichever occurs earlier. 18 U.S.C. § 3582(c)(1)(A); see also United States v. Mau Mau, No. 08-cr-00758, 2020 U.S. Dist. LEXIS 28392, at *3 n.4 (D. Utah Feb. 18, 2020) ("Such a motion may be brought only after the prisoner has exhausted certain avenues of administrative relief."); United States v. Cantu, No. 05-cr-00458, 2019 WL 2498923, at *3 (S.D. Tex. June 17, 2019) ("Under the

4

newly amended § 3582(c)(1)(A) [the defendant] has standing to bring this motion because more than 30 days elapsed between his reduction-in-sentence request to the warden and a response."); United States v. Cantu-Rivera, No. CR H-89-204, 2019 WL 2578272, at *1 (S.D. Tex. June 24, 2019) (defendant's "petition . . . meets the requirement of a lapse of 30 days from the receipt by the warden of the defendant's facility . . . The Court therefore has the authority to address the motion of the defendant.").

Petitioner sent a request for such a motion to the warden of Allenwood Low Security Correctional Institution on February 25, 2020. At the time of the instant filing, Petitioner has not received any reply. Accordingly, Petitioner has exhausted the newly amended avenues for administrative relief. He is entitled to bring this motion directly to his sentencing court pursuant to 18 U.S.C. § 3582(c)(1)(A), and this Court is vested with the jurisdiction to rule on the requested relief.

## 2. Petitioner's Request for Relief Is Consistent with both the Text of the Newly Amended Statute and the United States Sentencing Commission's Policy Statements.

### a. Congress Intended Sentencing Courts Exercise Their Discretion to Determine When "Extraordinary and Compelling Reasons" Existed.

In 2018, a bi-partisan Congress passed the First Step Act which amended the language under which a sentencing court could reduce a sentence for an "extraordinary and compelling reason" under Section 3582. However, it explicitly did not limit the "extraordinary and compelling reasons" to a set of enumerated circumstances, instead providing federal sentencing courts extensive discretion to

make a determination based on the individual circumstances before it.

The initial impetus for the inclusion of the compassionate relief statute in the 1984 Comprehensive Crime Control Act was the abolishment of federal parole. See S. Rep. No. 98225, at 52, 53 n.74 (1983). Because early release from prison was no longer available via parole, Congress permitted courts to reduce sentences under Section 3582(c):

> The Committee believes that there may be unusual cases in which an eventual reduction in the length of a term of imprisonment is justified by changed circumstances. These would include cases of severe illness, cases in which *other extraordinary and compelling circumstances justify a reduction of an unusually long sentence*, and some cases in which the sentencing guidelines for the offense of which the defend[ant] was convicted have been later amended to provide a shorter term of imprisonment.

Id. at 55–56 (emphasis added). Essentially, Congress viewed Section 3582(c) as enabling courts to reduce sentences which had previously been managed via the parole system. Of note, Congress imposed no limitations on courts' authority to make such reductions and did not define what constitutes "extraordinary and compelling reasons." Instead, Congress intended that if these circumstances were present, they would "justify a reduction of an unusually long sentence." S. Rep. No. 98-225, at 55-56. However, until the passage of the First Step Act, the BOP, part of the Department of Justice, hardly ever permitted a court to exercise this discretion.[2]

In 2018, Congress allowed the sentencing court to directly review an inmate's request once they had applied to the BOP for consideration as Petitioner has done.

**b. The U.S. Sentencing Commission Declined to Enact Limitations as to What Constitutes "Extraordinary and Compelling Reasons" for Compassionate Release.**

Congress delegated to the U.S. Sentencing Commission (the "Commission") the responsibility for defining the term "extraordinary and compelling reasons." See 28 U.S.C. § 994(t) ("The Commission . . . shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples."); see also 28 U.S.C. § 992(a)(2) (the Commission shall promulgate general policy statements regarding "the sentence modification provisions set forth in section[] . . .

---

[2] See, e.g., The Answer is No: Too Little Compassionate Release in US Federal Prisons, Human Rights Watch, at 2 (Nov. 2012), https://www.hrw.org/sites/default/files/reports/us1112ForUploadSm.pdf (noting that between 1992 and 2012, the average annual number of prisoners who received compassionate release following a motion by the BOP was less than twenty four).

3582(c) of title 18"). The Commission then envisaged the following factual considerations: (i) the medical condition of the defendant; (ii) the age of the defendant; (iii) the family circumstances of the defendant; and (iv) "other reasons" as determined by the BOP. U.S.S.G. § 1B1.13, Application Note 1(A). In fact, the commentary explicitly states that the compelling reason(s) could have been foreseen or even present at the time of sentencing. U.S.S.G. § 1B1.13, Application Note 2. Even if the reason "reasonably could have been known or anticipated by the sentencing court [, that fact] does not preclude consideration for a reduction." Id.

As the Commission's language indicates, extraordinary and compelling reasons for a sentence reduction may exist when a defendant is not elderly, ill or having family difficulties. While the statement does authorize the Director of the BOP to determine when such "other reasons" might warrant reduction in a particular case, the Commission has not amended these statements since the passage of the First Step Act. Such language is now irreconcilable with the revised statute which allows a defendant to bring a Section 3582 motion without any response from the BOP. As such, that portion of the statement is not binding upon a sentencing court as the Guidelines are advisory only, see United States v. Booker, 543 U.S. 220 (2005), and such instruction is inconsistent with the text and legislative intent of the First Step Act. "[B]ecause the current version of the Guideline policy statement conflicts with the First Step Act, the newly enacted statutory provisions must be given effect." Cantu-Rivera, 2019 WL 2578272, at *2 n.1; see also Cantu, 2019 WL 2498923, at *4 ("Given the changes to the statute, the policy-statement provision that was previously applicable to 18 U.S.C. § 3582(c)(1)(A) no longer fits with the statute and thus does not comply with the

8

congressional mandate that the policy statement must provide guidance on the appropriate use of the sentence-modification provisions under § 3852." (emphasis in original)). As such, "[u]nder the First Step Act, it is for the court, not the Director of the Bureau of Prisons to determine whether there is an 'extraordinary and compelling reason' to reduce a sentence." Mau mau, 2020 U.S. Dist. LEXIS 28392, at *4. Accord United States v. Cantu-Rivera, No. H-89-204, 2019 WL 2578272, at *2 n.1 (S.D. Tex. June 24, 2019); United States v. Beck, No. 13-CR-186-6, 2019 WL 2716505, at *5–6 (M.D.N.C. June 28, 2019); United States v. Fox, No. 14-cr-03-DBH, 2019 WL 3046086, at *3 (D. Me. July 11, 2019); United States v. Rivernider, No. 10-cr-222, 2019 WL 3816671, at *2 (D. Conn. Aug. 14, 2019); United States v. Bucci, No. 04-10194, 2019 WL 5075964, at *1 (D. Mass. Sept. 16, 2019); United States v. Brown, No. 05-CR-00227-1, 2019 WL 4942051, at *4 (S.D. Iowa Oct. 8, 2019); United States v. Urkevich, No. 03-CR-37, 2019 WL 6037391, at *3 (D. Neb. Nov. 14, 2019); United States v. Dusenbery, No. 91-cr-291, 2019 WL 6111418, at *3 n.3 (N.D. Ohio Nov. 18, 2019); United States v. Valdez, No. 98-cr-0133-01, 2019 WL 7373023, at *2–3 (D. Alaska Dec. 31, 2019); United States v. Schmitt, No. CR12-4076, 2020 WL 96904, at *3 (N.D. Iowa Jan. 8, 2020).

## 3. Extraordinary and Compelling Circumstances Warrant a Reduction Petitioner's Sentence.

### a. Significant Changes in Department of Justice Policy.

#### i. *Change in DOJ policy regarding Career Criminal Act Designation*

Petitioner's sentence was the result of one issue related to Petitioner's prior state convictions: as a result of his prior non-violent criminal record comprised entirely of small-time theft and drug dealing convictions.[3]

---

[3] Per Petitioner's PSR, he had prior criminal convictions for selling drugs, all of which occurred in an open-air environment, such as a street corner or a street block. CRIMINAL COMPLAINT ¶ 3 All occurred when he was between the ages of 18 and 25. Id. Further, according to the PSR, he never possessed more than 26 grams of any controlled substance. Id. There are no facts in either the PSR or the government's sentencing memorandum which indicate Petitioner's underlying offense involved drug distribution beyond low-level drug dealing. Also Petitioner has never been charged with any violent offenses. Id.

10

There has been intervening changes in the law since Petitioner was sentenced which could change his designation, i.e., FSA (2018).

However, those changes are not being addressed by Petitioner at this time.

### b. Petitioner's Personal Circumstances are Compelling and Extraordinary.

While in custody at FCI Allenwood, Petitioner received his certification as a Drug Counselor and Petitioner has completed several additional programs. He also worked steadily in the field of custodial services. He also worked in the Patent Net program where he reviewed scripts to identify misspellings and the like.[5] In addition, Petitioner has re-found religion while in custody and regularly attends services as well as classes so as to increase his knowledge about his practice. Petitioner has missed most of his children's lives. His daughter was supposed to be graduating from high school this spring. He would like the opportunity to be there for his daughter and be part of this small milestone in her life after he has missed so many others.

### c. The Presence of and Lack of Preparation for the Viral Pandemic COVID19 in Correctional Facilities Is an Extraordinary and Compelling Reason to Release Petitioner.

Finally, Petitioner is at significant risk because of the COVID-19 pandemic because he is a type II diabetic with high blood pressure.[6] Across the country, prosecutors, defense attorneys and even Congress are calling for the immediate release of non-violent criminals, particularly with preexisting conditions, to mitigate the viral pandemic spreading throughout the

---

[5] Petitioner has not received any infractions over his time in custody at the Allenwood Low Security Correctional Institution.

[6] Petitioner does not presently have his medical records for review by the Court but, upon information and belief, daily receives Metformin Hci (1000mg), Cloistral Atorvastatin (10mg) and Lisinopril (20mg) from the prison medical staff.

11

nation's correctional facilities. See, e.g., Letter from Kamala D. Harris to BOP Director Michael Carvajal dated Mar. 19, 2020 (noting that "[e]merging research has demonstrated how dangerous coronavirus is for the elderly and those with underlying conditions and compromised immune systems."); The Washington Post: Prosecutors, defense attorneys press to release inmates, drop charges and thin jail population in response to the coronavirus (Mar. 19, 2020), available at https://www.washingtonpost.com/local/legal-issues/prosecutors-press-to-release-inmates-dropcharges-and-thin-prison-population-in-response-to-the-coronavirus/2020/03/19/13005ee6-694811ea-b313-df458622c2cc_story.html; Fox News: U.S. Starts to release inmates due to coronavirus outbreak (Mar. 20, 2020), available at https://www.foxnews.com/health/us-starts release-inmates-coronavirus.[7]

Courts have joined the clamor of voices as well. On March 18, 2020, in United States v. Stephens, 15-cr-95 (AJN) (S.D.N.Y. Mar. 18, 2020), Judge Alison J. Nathan granted the defendant's emergency motion for reconsideration of denial of bail and ordered the defendant released with conditions. See id., Doc. 27. Judge Nathan noted that, since the initial bail hearing, "the unprecedented and extraordinarily dangerous nature of the COVID-19 pandemic has become apparent" and that while "there is not yet a known outbreak among the jail and prison populations, inmates may be at a heightened risk of contracting COVID-19

---

[7] See also Gregg S. Gonsalves, et al., Achieving A Fair And Effective COVID-19 Response: An Open Letter to Vice-President Mike Pence, and Other Federal, State, and Local Leaders from Public Health and Legal Experts in the United States (Mar. 2, 2020), available at https://bit.ly/2W9V6oS (open letter signed by 815 experts in public health, law, and human rights); see also Danielle Ivory, 'We Are Not a Hospital': A Prison Braces for the Coronavirus, N.Y. Times (Mar. 17, 2020), available at https://www.nytimes.com/2020/03/17/us/coronavirusprisons-jails.html; Martin Kaste, Prisons and Jails Worry About Becoming Coronavirus 'Incubators', NPR (Mar. 13, 2020), available at https://www.npr.org/2020/03/13/815002735/prisons-and-jails-worry-about-becomingcoronavirusincubators; Keri Blakinger & Beth Schwarzapfel, How Can Prisons Contain Coronavirus When Purell is a Contraband?, ABA JOURNAL (Mar. 13, 2020), available at https://www.abajournal.com/news/article/ when Purell-is contraband-how-can-prisons-contain-coronavirus; Jennifer Hansler & Kylie Atwood, Pompeo Calls for Humanitarian Release of Wrongfully Detained Americans in Iran Amid Coronavirus Outbreak, CNN (Mar. 10, 2020), available at https://cnn.it/2W4OpV7.

12

should an outbreak develop." Id. at 2 (citing Joseph A. Bick, Infection Control in Jails and Prisons, 45 Clinical Infectious Diseases 1047, 1047 (Oct. 2007)). See also United States v. Barkman, No. 19-cr-0052, 2020 U.S. Dist. LEXIS 45628 (D. Nev. Mar. 17, 2020) (determining that newly suggested guidelines for federal correctional facilities in Nevada "do not go far enough given the catastrophic consequences").

Petitioner is particularly at risk for infection and serious illness. According to the Center for Disease Control ("CDC"), people who suffer from, inter alia, high blood pressure, diabetic and male African-American "are at a higher risk of getting very sick from this illness." See CDC: COVID-19: What if You are High Risk, available at https://www.cdc.gov/coronavirus/2019-ncov/specific groups/high-risk-complications.html. As with most correctional facilities, Petitioner is housed in open quarters and shares all showers, toilets and sinks. He does not have access to sanitizer, gloves or masks. Petitioner is without the basic tools the rest of society uses to protect themselves from this novel virus. The influx of COVID-19 on prisoners, such as Petitioner, is by itself an appropriate extraordinary and compelling reason for modest reduction in his sentence and early release.

## CONCLUSION

Petitioner has served over two years. He is a very different man than he was then. This Court has the clear authority to order Petitioner released. In light of the changed circumstances regarding Department of Justice charging policy as well as the current serious and ongoing COVID-19 pandemic, the Court should exercise its discretion and order him released immediately.

**WHEREFORE,** for all the foregoing reasons, and any which become apparent to this Honorable Court during a hearing on this Motion for Sentence Reduction, Petitioner requests immediate release and the granting of his Motion.

April 16, 2020

Respectfully,

~~Fait Accompli~~ Legal Services

14

Fait Accompli Legal Services
3319 Greenfield Rd #155
Dearborn, MI 48120-1212



7019 2970 0001 0851 2789

WED 13 MAY

United States District Court
℅ Court Clerk's Office
801 E. Broad Street Rm 800
Nashville, TN 37203

RECEIVED
in Clerk's Office
MAY 18 2020
U.S. District Court
Middle District of TN